A. C. WILCOX ET AL. v. G. B. TENNANT.

Delivered April 16, 1896.

1.  **Mortgage or Conditional Sale—Construction of Instruments.**
Where a deed absolute and an accompanying agreement are executed by the grantor to secure the payment of money by him, and after their execution the relation of debtor and creditor continues to exist between the parties, the deed will be construed as only a mortgage, despite the fact that the agreement expressly stipulates that the transaction is a conditional sale, and the further fact that the grantee destroyed the unpaid note at the expiration of the time stipulated in the agreement.

2.  **Promissory Note—Fraud.**
One who by fraudulent representations procures the transfer and endorsement to himself of notes held by third parties is not entitled to recover thereon against such parties as endorsers.

APPEAL from Liberty.   Tried below before Hon. L. B. HIGHTOWER.

*G. H. Pendavis, J. L. Hudson, H. L. McWilliams* and *W. S. Hunt*, for appellants.—1. . The court erred in its construction of the contract between plaintiff Tennant and defendant Wilcox, of date April 10, 1894, evidenced by the deed from said Wilcox to said Tennant, and the defeasance executed simultaneously therewith, because said contract was either a mortgage or a conditional sale, and if it be held to be a mortgage, then the land mortgaged became security to plaintiff for the twelve hundred dollars advanced by him to pay the Francis Smith note, and said mortgage should have been foreclosed, and the proceeds applied to the satisfaction of the indebtedness secured thereby. Or, if said contract be held to be a conditional sale, then the payment of said sum of twelve hundred dollars by plaintiff was a part of the consideration for said sale, and defendants Bryan and McWilliams and the two notes held by plaintiff were discharged from all liability to plaintiff in respect to said sum of twelve hundred dollars. Whereas, the judgment of the court permits plaintiff to hold the land without paying the consideration, which is contrary to equity and good conscience. Ruffier v. Womack, 30 Texas, 332; Alstin v. Cundiff, 52 Texas, 453; Hubby v. Harris, 68 Texas, 91; McCamant v. Roberts, 80 Texas, 317.

2.   Under the fair intendment of the contract between appellee and Wilcox, of date April 10, 1894, appellee was fully secured in the payment of interest on the Francis Smith note, due June 1, 1894, and the concealing of the fact that he was so secured from these appellants in order to induce them to give him further security was a fraud, and the

delivery of the two notes to him having been procured by fraud, such delivery carried no title, and plaintiff did not thereby become entitled to recover upon said notes, or to hold them against these appellants. Mitchell v. Zimmerman, 4 Texas, 79; George v. Taylor, 55 Texas, 102; Anson on Contracts, 2 Am. ed., 199; 8 Am. and Eng. Enc. Law, 635.

*George H. Breaker*, for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—The transactions out of which this suit arises were as follows: On June 14, 1893, the appellant, Bettie Bryan and Francis McWilliams, conveyed to their co-appellant, A. C. Wilcox, a league and two sections of land in Liberty County, aggregating in amount about 5700 acres. For part of the purchase money Wilcox executed and delivered to his vendors twenty-eight notes for $500 each, secured by vendor's lien on the land. The league and one of the sections were encumbered by a mortgage of $16,000, and the other section by a mortgage for $2048. The mortgagees are not parties to this suit, and the mortgages are in no way affected by it. The payment of these mortgages and the interest thereon was assumed by Wilcox. On December 15, 1893, Wilcox conveyed to the appellee, Tennant, an undivided one-fourth of the land, Tennant assuming the payment of one-fourth of the mortgages and one-fourth of the purchase money notes given by Wilcox to Bryan and McWilliams. Thereafter, ten of the purchase money notes given by Wilcox having been paid, Bryan and McWilliams released their lien as to a portion of the land, aggregating about 2316 acres.

On April 10, 1894, Wilcox executed and delivered to Tennant a deed absolute on its face, reciting a consideration of $12,000, paid, and conveying an undivided three-fourths of about 1700 acres of the land which had been released by Bryan and McWilliams, Tennant having acquired one-fourth by the previous deed. Contemporaneously with the execution of said deed there was executed between Tennant and Wilcox an instrument, as follows:

"This memoranda witnesseth: That the undersigned, A. C. Wilcox, has this day executed and delivered to the undersigned, G. B. Tennant, a deed conveying to said Tennant the following described property situated in Liberty County, Texas, to-wit: The undivided three-fourths of blocks 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 29, 30, 31, 33, 34 and 35, in the town of Raywood. Also lots 1, 2, 3, 4, 13, 14, 15, 16, 17, 18, 19, 20, 27, 28, 29, 30, 31, 32, 36, 37, 59, 61, 62, 65, 69, 70, 71, 72, 75, 76, 87, 91, 101, 102, 105, 109 and 110 in Raywood property, and it is understood and agreed that in the event that the said Wilcox shall at the respective dates of maturity thereof pay, take up and have cancelled each of the following promissory notes, to-wit, a certain note this day executed and signed by Wilcox, payable to G. B. Tennant, of even date herewith, payable on or before the first day of October, 1894, for the sum of $1216.62, and the three-fourths of the

note for $1600, due June 1, 1894, described in the deed of trust exe-·cuted by Blackshear to Drought, trustee, for the use of Francis S. Smith, recorded in Book 2, pages 240 to 246, of the record of mortgages of Liberty County, Texas, and each and all of the notes, principal and interest now remaining unpaid, described and secured by the deed executed by Francis McWilliams and wife and Bettie Bryan to A. C. Wilcox, recorded in Book L, pages 521–4 of the record of deeds of Liberty County, Texas, and vendor's lien therein, then the said G. B. Tennant shall convey to said Wilcox the said lots and blocks this day ·conveyed to him by said Wilcox by the deed of even date herewith above mentioned. But it is expressly understood and agreed that the said above mentioned deed of even date this day executed by said Wilcox to said Tennant is a conditional sale, and not a mortgage, and that in the event that the said Wilcox shall fail or elect not to pay or take up any one or more of said notes above mentioned, principal and interest as they mature, then the said note above mentioned of even date herewith, executed by the said Wilcox to the said Tennant, if not already paid by the said Wilcox, shall be null and void, and the said deed of even date herewith executed by said Wilcox to said Tennant shall be and become absolute, final, irrevocable, and shall invest in the said Tennant a complete fee simple interest and title in the property therein mentioned, without further action, proceeding or foreclosure on the part of said Tennant.

In testimony whereof we have hereunto set our hands, this, the 10th day of April, 1894. Executed in duplicate.

[Signed]     A. C. Wilcox,
G. B. Tennant."

On or about June 1, 1894, an installment of interest of $1600 on the Francis Smith mortgage for $16,000 became due. The payment of the interest was essential to the protection of the respective interests in the land of all the parties to this suit, and as an inducement to the appellee Tennant to pay said installment of interest, the appellants Bryan and McWilliams, on June 2, 1894, endorsed and delivered to Tennant two of the purchase money notes given to them by Wilcox, and thereafter Tennant paid the said installment of interest on the Francis Smith mortgage. On June 5, 1894, Tennant notified Wilcox that by reason of his failure to pay his, Wilcox's, proportion of interest on the Francis Smith mortgage due June 1, 1894, the deed of April 10, 1894, from Wilcox to Tennant had become absolute, and thereafter Tennant returned to Wilcox the note of Wilcox for $1216.62, described in the contract, cancelled.

Wilcox having failed to pay the purchase money notes given by him to Bryan and McWilliams at their maturity, Tennant filed this suit on February 2, 1895, praying for judgment against Wilcox for the amount of the two of said notes held by him, with foreclosure of lien, and also praying for judgment against Bryan and McWilliams as endorsers.

The defendant, Wilcox, answered that the deed of April 10, 1894, conveying to the plaintiff three-fourths of 1700 acres of the land, was in fact a mortgage to secure to said Tennant, first, the payment by Wilcox of the note for $1216.62, described in the contract of defeasance; second, the payment by Wilcox of three-fourths of the interest due June 1, 1894, on the Francis Smith mortgage; and third, the payment by Wilcox of the unpaid purchase money notes held by Bryan and McWilliams. Defendant Wilcox admitted his default in payment of the indebtedness so secured, and the right of plaintiff under the contract of defeasance to elect to declare the deed absolute, but alleged that upon so doing, plaintiff became liable and bound to pay the whole of the said installment of interest on the Francis Smith mortgage, and the whole of the notes held by Bryan and McWilliams, such payment being the consideration to be paid by plaintiff for the land. Defendant Wilcox denied that plaintiff was the owner of the two notes sued on, or had any right to recover thereon. Defendant Wilcox prayed that plaintiff take nothing as against him upon the two notes sued on, and that in case judgment was rendered in favor of Bryan and McWilliams upon the whole of the unpaid notes held by them, he have judgment over against plaintiff, and that the 1700 acres of land conveyed to plaintiff by the deed of April 10, 1894, be first sold in satisfaction of the lien of said notes.

The defendants Bryan and McWilliams answered that the delivery by them to plaintiff of the two notes sued on was procured by the fraudulent representations of plaintiff to them that such delivery was necessary to secure the payment of the interest on the Francis Smith mortgage, the plaintiff fraudulently concealing from them the fact that Wilcox had already secured him, plaintiff, in the payment of same, by the contract of April 10th, which contract defendants specially pleaded. Defendants Bryan and McWilliams acquiesced in the construction of the contract of April 10, 1894, contended for by their co-defendant, Wilcox, and alleged that by the action of the parties thereto in declaring said contract an absolute conveyance, the plaintiff had received full consideration for the payment of interest made by him, and that the notes sued on were therefore the property of said defendants. And further, by way of cross bill, defendants Bryan and McWilliams prayed for judgment in their favor against defendant Wilcox and plaintiff, for the amount of the eighteen notes remaining unpaid, executed by Wilcox in their favor, including the two held by plaintiff, with foreclosure of their vendor's lien upon the land not released by them.

By supplemental petition the plaintiff demurred to so much of defendants' answers as sought any recovery against him personally, or to establish a lien upon the 2000 acres of land released by Bryan and McWilliams. Plaintiff also specially excepted to so much of the answer of defendants as alleged liability on his part to pay any part of the interest on the Francis Smith mortgage, or of the notes held by Bryan and McWilliams, by reason of the contract between plaintiff and Wil-

cox of April 10, 1894. Also to so much of said answers as set up a lien on any part of the 2000 acres released by Bryan and McWilliams; which special exceptions of plaintiff were sustained by the court, and all other exceptions of all parties were overruled. The case was tried by the court without a jury, on March 2, and judgment rendered March 5, 1895, in favor of plaintiff against all the defendants for the amount of the two notes sued on, and in favor of Bryan and McWilliams against Wilcox for the amount of the sixteen notes held by them, with fore-closure of vendor's lien upon the land not released, same to be sold and proceeds applied to the payment of the eighteen notes, pro rata. From the judgment rendered against them in favor of plaintiff, the defend-ants Bryan and McWilliams prosecute this appeal. Wilcox also per-fected an appeal and assigned errors, but has failed to appear in this court by brief or otherwise, and his appeal will be treated as abandoned. Appellee Tennant has not briefed the case further than to object to one or two statements in the brief filed for appellants Bryan and Mc-Williams, and we have not the aid of the views of his counsel in support of the judgment.

The conclusions of the trial judge are not shown by the record. The case will be decided upon the brief for appellants Bryan and McWil-liams. The particulars in which it is objected to by appellee are unim-portant, save one. That is the statement that Tennant, upon receiving the first conveyance from Wilcox of one-fourth of the land, assumed the payment of one-fourth of all the incumbrances. The deed recites only that it is made subject to the liens, naming them, but the evidence otherwise shows Tennant's assumption of them. He only paid Wilcox, at the time, the balance of the consideration after deducting a sum equal to one-fourth of the charges upon the land. He afterwards paid sums in excess of his proportion of the incumbrances as they fell due, but this does not seem to affect this point. The note for $1216.62 recited in the agreement of April 10, 1894, was given by Wilcox to cover the money so advanced by Tennant in excess of his share of the incum-brances, $716.62, and a bonus of $500 which Wilcox agreed to pay Tennant for so doing. The allegations in the answer of Bryan and Mc-Williams as to the manner in which the notes were obtained from them by Tennant were established by the evidence and we find them to be true.

We are of the opinion that the two instruments of April 10, 1894, constituted but a mortgage to secure the payment of the note for $1216.62, as well as the performance by Wilcox of his obligation to pay his proportion of the mortgages and purchase money notes which were charged upon the land. There is no question that after the execution of those instruments the relation of debtor and creditor continued to exist between Wilcox and Tennant. Wilcox still owed Tennant the amount of the note contemporaneously executed, and owed also the duty of paying three-fourths of the debts charged upon the land, and of re-imbursing Tennant in case he should have to discharge more than his

just proportion thereof. This relation is the test by which a mortgage is distinguished from a conditional sale. Ruffier v. Womack, 30 Texas, 332; Hubby v. Harris, 68 Texas, 91.

The continuance of this relation after the execution of the deeds determined their character, and showed that they were intended at their inception to secure the payment of a debt and the performance of a duty, and the maxim "once a mortgage always a mortgage" applies. Jones on Mortgages, secs. 7, 263, 250, 1039. The provisions which undertook to place the right of election in Wilcox to determine whether he would pay the debts or give up the land, and stipulated that the transaction was a conditional sale and not a mortgage, were patent devices to cut off the right of redemption, and, under principles of equity too long and too firmly established to admit of question, cannot be allowed to prevail. It is true parties may so shape their transactions as to vest the title to land in the grantee subject to be defeated by the payment of money by the grantor in the future. Where this, in truth, is the intention, it must govern; and where the instruments are such that they can operate as a conditional sale and the parties expressly stipulate that they shall so operate, it may be that this stipulation should control the courts. Hubby v. Harris, supra.

But we apprehend that parties cannot create that which, in its essential nature and operation, is a mortgage, and convert it into a conditional sale by simply declaring it to be such. These instruments, on their face, necessarily operate to secure the payment of debts and the discharge of duties. Wilcox was never released from any obligation resting upon him, but continued bound for all of his indebtedness. It is true that the rights of the parties must be reciprocal, and if, in truth, there was no right in Tennant to hold Wilcox to the payment of the moneys mentioned in the contract, then there could be no mortgage. But the provisions in terms giving to Wilcox the right to elect whether or not he should pay was, in view of the general nature of the transaction, futile. Tennant still held his note, and other parties held him bound for the other debts. He was not in fact released, and these provisions of the defeasance are, as before stated, simple attempts to defeat the equity of redemption, and, as they could not do so, Wilcox remained bound for the debts. The fact that Tennant mistook his rights and cancelled the note does not alter the case. The reciprocal rights of the parties were fixed at the time of the transaction and resulted as legal consequences from its character. We have been induced to determine the effect of this transaction though, as will be seen, we do not deem the view taken of it essential to the judgment which will be rendered. It is the view most favorable to appellee in determining the issue between him and Bryan and McWilliams. We would suppose, but for the assumption to the contrary in appellants' brief, that it is the view which was taken by the court below. The answer of Wilcox which charged that the transaction in question was only a mortgage, was left standing, but those parts of it which sought to give to the deeds the

effect of a sale of the land, and, as a consequence, to charge Tennant with the obligation to pay the debts which formed its consideration, and to establish a lien upon his interest in the land to secure it, were stricken out on exception. And we do not see that, under the construction which we put upon the deed and defeasance, the court ought to have ruled otherwise upon these exceptions. Under that construction, there was no ground upon which to hold that Tennant became primarily bound to Wilcox to pay the debts mentioned in the instrument of defeasance. On the other hand, if the conveyance to Tennant were treated as a sale with the right in Wilcox at his election to repurchase by payment of the debts mentioned, and he elected not to buy the land back, and Tennant held it, he would unquestionably be bound to Wilcox for the consideration of the conveyance. He could not hold both the land and its price. The consideration recited in the deed is $12,000, but the other instrument shows that it was made up of the several obligations mentioned. It seems that Tennant claimed the right to hold the land upon payment of the interest due on the Smith mortgage and surrendering the note for $1216.62, without satisfying the other indebtedness mentioned. We think he could not do that if the transaction was a sale. If he took the land he would have to pay the whole consideration. Jones on Mortgages, sec. 267. The two documents taken together leave no doubt as to what that consideration was. So if the latter view of the transaction were adopted, the consequence would be that Tennant, having assumed to pay the Smith mortgage, obtained from Bryan and McWilliams the two notes sued on in order to indemnify him against loss in doing that which he was bound to do, at the same time concealing from them the fact out of which his obligation arose, and representing to them that Wilcox was unable to secure him. And, if the first view, which is the correct one, be taken, appellee concealed the fact that he was secured by Wilcox and represented that Wilcox was unable to secure him and thereby obtained the notes.

We have said that this view is most favorable to Tennant because, though it be the fact that he had received security from Wilcox for the payment of the interest due on the mortgage, still, if he had acted openly and fairly and had received from Bryan and McWilliams the notes as additional security, this might be upheld; while, if he had made the debt his own, there would be no possible consideration for the transfer of the notes. As the facts are, however, we hold that by concealing from appellants the transactions with Wilcox, and by representing that the latter could give no security for the payment of the installment of interest, when he had already done so, and thereby inducing them to part with their notes when they would not otherwise have done so, appellee practiced a fraud which vitiates the transfer of the notes, and he should not have been allowed to recover. By the judgment rendered, appellants lose absolutely the amount of the two notes out of the purchase money for which Wilcox was wholly and Tennant partly bound. The rights of Tennant and Wilcox as against each other are

not presented in this appeal and we consider the case only so far as the controversy between appellants Bryan and McWilliams and Tennant make it necessary. Wilcox is before the court so as to give the court power to render such judgment as the decision makes proper. We have stated our views of the case so as to avoid, as far as possible, prejudicing the rights of either Tennant or Wilcox against each other. The court below has not, by the judgment rendered, undertaken to adjudicate them, nor will we.

The judgment will be reversed, and judgment will be here rendered that plaintiff Tennant take nothing by his suit upon the notes, and that appellants Bryan and McWilliams recover of Wilcox the amount due upon all of the eighteen notes, with a foreclosure as against both Tennant and Wilcox of the lien upon the land which has not been released.

*Reversed and rendered.*

Writ of error refused by Supreme Court.