HARRISON et al. v. HOGUE et al.†

(Court of Civil Appeals of Texas. March 25, 1911. Rehearing Denied April 8, 1911.)

1. MORTGAGES (§ 32*)—ABSOLUTE DEED AS MORTGAGE—INTENT OF PARTIES.

That the grantor in an absolute deed understood the transaction to be a mortgage is not alone sufficient to establish the fact.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 85; Dec. Dig. § 32.*]

2. MORTGAGES (§ 38*)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE.

The evidence to show that a deed, absolute in form, was intended as a mortgage, must be clear, unequivocal, and satisfactory.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 108; Dec. Dig. § 38.*]

3. MORTGAGES (§ 32*)—ABSOLUTE DEED AS MORTGAGE—INTENT OF PARTIES.

A deed absolute on its face is to be construed to be a mortgage if from all the circumstances preceding and attending its execution such was the intention of the parties.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 85; Dec. Dig. § 32.*]

4. MORTGAGES (§ 32*)—ABSOLUTE DEED AS MORTGAGE—PRE-EXISTING DEBT—DISTINGUISHMENT.

Where an absolute deed is given in consideration of a pre-existing debt, it will be held a mortgage, unless the debt to the extent of such consideration is extinguished, and the evidence thereof is surrendered.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 61, 88; Dec. Dig. § 32.*]

5. MORTGAGES (§ 38*)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE.

Evidence *held* to warrant a finding that an absolute deed executed by complainant and her husband was intended as a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 108–111; Dec. Dig. § 38.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Ella Hogue and others against Edward T. Harrison, as receiver, etc., and others. Decree for complainants, and defendants appeal. Affirmed.

J. L. Goggans and D. A. Eldridge, for appellants. T. F. Lewis, for appellees.

BOOKHOUT, J. Mrs. Ella Hogue and husband, W. J. Hogue, on July 19, 1909, brought suit in the district court of Dallas county against the Union Live Stock Insurance Company and Edward T. Harrison, receiver of said company, to cancel a deed made by them to such receiver conveying their homestead in the city of Dallas, claiming that, while in form a general warranty deed, yet in fact it was a mortgage, and so understood by the grantors and grantee. Defendants pleaded a general denial. The cause was tried by a jury and resulted in a verdict for the plaintiffs, whereupon the court entered judgment in favor of plaintiffs, from which judgment this appeal is prosecuted.

Error is assigned, in substance, that the evidence is insufficient to support the verdict, and for this reason the court erred in overruling appellants' motion for new trial. [2] The proposition presented is: One who alleges that a general warranty deed is a mortgage must prove it by clear, unequivocal and satisfactory evidence. [1] The fact that the grantor understood the transaction to be a mortgage is not alone sufficient to prove it so. It may be conceded that this proposition announces a correct proposition of law. It was so held in the case of Brewster v. Davis, 56 Tex. 478.

The plaintiffs introduced in evidence the original deed, which was in the usual form of a general warranty deed, signed by the plaintiffs, dated December 15, 1908, conveying to Edward T. Harrison, as receiver of the Union Live Stock Insurance Company, the property in controversy, for the following consideration, viz.: "Ten dollars to us in hand paid by Edward T. Harrison, receiver of the Union Live Stock Insurance Company, and the further consideration of five thousand dollars ($5,000) heretofore received by the said W. J. Hogue from the Union Live Stock Insurance Company." This deed was acknowledged by the grantors before a notary public of Dallas county, Tex., and his certificate of such acknowledgment was in statutory form. The defendant introduced in evidence the following instrument:

"The State of Texas, County of Dallas. Know all men by these presents that whereas, W. J. Hogue and wife, Ella Hogue, have this day sold and conveyed by warranty deed to Edward T. Harrison, receiver of the Union Live Stock Insurance Company, the house and lot hereinafter described; and, whereas, the said W. J. Hogue and wife, Ella Hogue, are unable to surrender possession of said premises at this time to the said Edward T. Harrison, receiver, as aforesaid, on account of the physical condition of the said Ella Hogue; and, whereas, the said Edward T. Harrison, receiver, has agreed to rent said premises to the said W. J. Hogue and permit him to remain in possession thereof until the first day of April, 1909, conditioned that the said W. J. Hogue and wife, Ella Hogue, acknowledge the validity of the aforesaid sale in every respect, and further acknowledge that their possession of said premises from this date shall be that of tenants of the said Edward T. Harrison: Now therefore, we, the said W. J. Hogue and wife, Ella Hogue, on our oath do say that the sale of said premises by us to the said Edward T. Harrison, receiver of the Union Live Stock Insurance Company, was in the utmost good faith and in all respects bona fide and for a valuable consideration received by us; that the deed above referred to was executed voluntarily, freely and willingly, and without fear, compulsion, persuasion, duress, or fraud in any manner whatever. Witness our hands

this 15th day of December, 1908. [Signed] W. J. Hogue. [Signed] Ella Hogue.

"Sworn to and subscribed before me, this 15th day of December, 1908. [Signed] Wm. M. Jones, Notary Public in and for Dallas County, Texas.

"In consideration of the premises and of the promises of W. J. Hogue and wife, Ella Hogue, now made, I, Edward T. Harrison, receiver of the Union Live Stock Insurance Company, do by these presents lease and demise unto the said W. J. Hogue, the following described property, situated in the city and county of Dallas, Texas, and being known as lot No. seven (7) and the house located thereon in block No. 549—'C' of Murphy & Bolanz' official map of the city of Dallas, Texas, and more particularly described in a deed of even date herewith, given by the said W. J. Hogue and wife to the said Edward T. Harrison, receiver, to which reference is here made, from this date until the first day of April, 1909, to be occupied as a dwelling and not otherwise. Witness my hand this 15th day of December, 1908. [Signed] Edward T. Harrison, Receiver Union Live Stock Insurance Company.

"We, W. J. Hogue and wife, Ella Hogue, in consideration of the premises, do by these presents agree to pay to the said Edward T. Harrison, receiver of the Union Live Stock Insurance Company, the sum of twenty-five dollars ($25.00) for the use of the above described premises for each and every month during the term of this lease, beginning January 1st, 1909. We further agree that we will not sublet said premises; that we will pay the rent promptly; that we will deliver the said premises on April 1st, 1909, to the said Edward T. Harrison; that we will attorn to him during the term of this lease contract, and we waive any notice to deliver possession of said premises on April 1st, 1909. Witness our hands this 15th day of December, 1908. [Signed] W. J. Hogue. [Signed] Ella Hogue."

This lease was duly acknowledged by Hogue and Mrs. Hogue.

[3] The decisions in this state are to the effect that a deed absolute on its face is to be construed as a mortgage if from all the circumstances preceding and attending its execution such was the intention of the parties thereto. Loving v. Millikin, 59 Tex. 423; Garter v. Carter, 5 Tex. 93.

[4] It seems clear that where the consideration of a deed is a pre-existing debt, unless it is shown that the debt to the extent of such consideration is extinguished and the evidence of it is surrendered, the instrument will be declared a mortgage. Rouffier v. Womack, 30 Tex. 332; Alstin v. Cundiff, 52 Tex. 462; De Bruhl v. Maas, 54 Tex. 472; Wilcox v. Tennant, 13 Tex. Civ. App. 220, 35 S. W. 865.

Mrs. Ella Hogue, the plaintiff, testified as follows: "My name is Mrs. Ella Hogue, and live at 121 State street, Dallas, Texas."

Upon being shown the deed, she further testified: "That is my signature, and I suppose this deed is the one which is in controversy here. When I signed it, I was at home in bed sick, at the place where I am now living, the place in controversy in this suit. The deed was executed to secure a debt that Mr. Hogue owed, or was supposed to owe the Union Live Stock Insurance Company. I never received any consideration for, no money was paid, or anything of value turned over to me for this deed, and I don't think there was anything paid to Mr. Hogue. I never heard anything about it, if there was. They weren't to incumber my home in any way. I was to have my home." She also testified that the deed was executed and delivered to secure a debt owed by Mr. Hogue to the Union Live Stock Insurance Company. Defendant Harrison testified that the deed was given in consideration of a debt owing by Hogue to Union Live Stock Insurance Company, and "I don't think there has ever been a credit entered on the books for the $5,000 in consideration of this deed. It was not entered at the time of the delivery by me. I canceled the indebtedness in this way. I didn't turn it over to Mr. Hogue, but I had a release executed and acknowledged by him, and I kept the release and note because they were title papers. I don't think I have ever put the release to record." He further testified that Hogue said to him: " 'Now, here, Harrison, after you dispose of my home out here, selling that, then you sell this other property—it may be you will get more than I am really indebted to the Union Live Stock Company. Now I have conveyed my home, and then I am going to convey you this property, and in settling that all up, in selling it, perhaps you will have more than I owe the Union Live Stock Company.' And he said, 'If it does, it looks to me like that money would be coming back to me.' And I said, 'Mr. Hogue, that may be, that we cannot take it up at this time, and after I collect all these assets and sell this property, if there is anything coming back to you, that is a matter that will have to be determined at that time. There is no way to get at it now, and we do not know what will be realized from these assets, but, if we did, we will have to determine it then.' "

[5] The question to be determined is: Does the evidence support the verdict? We think so. The affidavit of Hogue and Mrs. Hogue secured from them by appellant and made a part of the lease contract gives color to appellees' contention that the deed is not what it purports to be on its face. The securing of this affidavit and its incorporation in the lease contract were circumstances which the jury was entitled to consider. Mrs. Hogue testified that she "knew nothing of any lease contract, did not know of it till long afterwards." The evidence shows that the deed was executed to secure a pre-existing debt. The evidence of appellant

is that there was no credit entered on the debt, and there is nothing in the record showing the debt was canceled. Hogue, with whom appellant dealt, claimed that, after the sale of the property, any excess over his indebtedness the property might bring should be returned to him. Harrison did not deny this claim, but stated that after all the assets are collected and sold, if there is anything coming to Hogue, it must be determined at that time. We conclude that this evidence in connection with the circumstances attending the transaction was sufficient to support the verdict of the jury.

The judgment is affirmed.