### CITIZENS' NAT. BANK OF VALLIANT, OKL., et al. v. STROUD.

#### No. 2598.

Court of Civil Appeals of Texas. Eastland.
Sept. 19, 1947.

Rehearing Denied Oct. 17, 1947.

Tom Finney, of Idabel, Okl., Conner & Conner, of Eastland, and Ben J. Dean and Lyndsay D. Hawkins, both of Breckenridge, for appellants.

Robert E. Bowers and J. G. Harrell, both of Breckenridge, and Jno. F. Sharp, of Oklahoma City, Okl., for appellee.

GRISSOM, Chief Justice.

This is a suit in trespass to try title to a one-sixth interest in 640 acres of land in Stephens County, Texas, instituted by George Stroud against the Citizens National Bank of Valliant, Oklahoma and others. Plaintiff alleged the execution of a deed by him to said bank on July 30, 1923, covering his one-sixth interest in said land, which deed was absolute on its face, but that it was mutually intended as a mortgage to secure his debt to the bank, evidenced by a note in the principal sum of $3,185.48, which, he charged, had been thereafter paid. In the alternative, plaintiff alleged title under the three, five and ten year statutes of limitation. Defendants claim title by virtue of George Stroud's deed to the Valliant Bank and a deed to them, or those under whom they claim, executed by

Bernie Herstein, trustee and liquidating agent for said bank, in August, 1939. Defendants asserted that the deed from Stroud was not intended as a mortgage but as an absolute conveyance of the land; they alleged that Stroud's debt to the bank had been paid by said deed and by transfer by Stroud to the bank of his picture show in Valliant. Defendants further alleged title by limitation, and that they were innocent purchasers of George Stroud's interest in said land from said bank, for value and without notice of plaintiff's claim.

The case was submitted to a jury on special issues which were answered as follows: (1) That when the deed signed by Stroud, dated July 30, 1923, was delivered to the bank, it was agreed between Stroud and the bank that it was to be held as security for Stroud's debt to the bank; (2) that at the time of the execution and delivery of the deed, it was not agreed that Stroud's debt to the bank was paid and satisfied by said deed and delivery of the picture show property to the bank; (3) that Stroud has held peaceable and adverse possession of the land, cultivating, using and enjoying the same "for any period of ten years from and after April 7, 1928"; that (D 1) Frank Yawitz, The Idabel National Bank, Bernie Herstein and Myrtle Herstein did not purchase the land in good faith, for a valuable consideration, believing that their grantors had good title thereto, without notice that plaintiff was claiming title thereto; (D 2) that Frank Yawitz did not so purchase the land; (D 3) that defendants, and those under whom they claim, have not had and held peaceable and adverse possession of the land for any period of ten consecutive years, using, cultivating and enjoying the same and paying taxes thereon, between July 30, 1923, the date of Stroud's deed to the Valliant bank, and October 21, 1939, the date this suit was filed; (D 4) that defendants, and those under whom they claim, have not had and held peaceable and adverse possession of the land, using cultivating or enjoying the same, and paying taxes currently due thereon and claiming under a deed duly registered for any consecutive five year period between July 30, 1923, and October 21, 1939.

Judgment was rendered on the verdict awarding Stroud title and possession of the land. Defendants have appealed.

Appellant's first point is that evidence that Stroud's deed to the Valliant bank, dated July 30, 1923, was mutually intended by the parties thereto as a mortgage is not so clear, unequivocal and convincing as to justify the court in treating it as anything other than an absolute conveyance of the land. At the time of the execution and delivery of the deed, the bank had a mortgage on the fixtures in Stroud's picture show in Valliant and a mortgage on a one-twelfth interest in the section of land in question, which was erroneously described therein as being in McCurtain County, Oklahoma. George Stroud's interest in said section was one-sixth, not one-twelfth, and it was situated in Stephens County, Texas, instead of McCurtain County, Oklahoma. George and Jim Stroud testified that the bank asked for a deed from George Stroud to his interest in the land as additional security for Stroud's debt to the bank; that its cashier tendered to George Stroud a deed already prepared, which by its terms purported to convey Stroud's one-sixth interest in the section to the Valliant bank; that the cashier assured Stroud the deed would not be recorded but would be held in the bank as additional security for the loan. Although the deed was executed and delivered to the bank on July 30, 1923, it was not filed for record until March 8, 1924. George Stroud testified that he did not know the deed had been recorded until December, 1938; that he had procured an agreement for the Strouds to lease the land for oil and gas and to get a test well speedily drilled; that when the lessee had the title examined he found the deed from Stroud to the bank of record and refused to accept the lease until it was signed by the bank. The bank closed and liquidated in the Spring of 1928. The bank thereafter paid no taxes and collected no rent from the land and neither it nor its assigns thereafter paid any attention to said land until December, 1938. In August, 1939, the bank, acting by Herstein, trustee and liquidating agent, conveyed its interest in the land to Herstein and wife, Yawitz and The Ida-

bel National Bank. Said grantees, their heirs or assigns are the appellants.

George and Jim Stroud testified that on May 6, 1920, before execution of the deed on July 30, 1923, George Stroud borrowed more than $3000 from said bank; that he was then part owner of a drug store and owned a picture show in Valliant; that on May 12, 1921, his note was renewed and he gave the bank a mortgage on the fixtures in his picture show to secure his debt; that in the summer of 1921, George decided to go to college; that it was then agreed that the bank would operate the show and apply the profits as a credit to his note; that the bank operated the show until 1924, when they sold it; that in 1923, Mr. Barnett, cashier, who handled the loan and looked after its security for the bank, told George that a bank inspector was criticizing the loan and they would probably ask him for a deed; "that he wanted it for additional security to make my note look a little better;" that a week later the cashier "came to me with a deed"; that George Stroud discussed it with his brother and they agreed that since the deed was to be kept as security and not recorded he would execute the deed. That cashier Barnett said he would hold the deed in the bank until the picture show "worked itself out." That he "was sure the picture show would work itself out; that the revenue was fairly good and that he would continue to run it until they got enough out of it to clear up the note." That the bank never accounted for the income from operating the show. That Barnett said the deed would not be recorded but would be held in the bank. George Stroud testified that he would not have signed the deed if he had known it was to be used as a deed "instead of additional security"; that he discussed with cashier Barnett on several occasions the question as to whether or not the instrument would be treated as a deed; that Barnett "assured me that the deed was to be used as additional security;" that a man in charge of the bank out of Oklahoma City, "was criticizing the loan and he wanted to satisfy him and he thought that would be sufficient additional security;" that Barnett prepared the deed and brought it to the drug store where George signed it on July 30, 1923, and delivered it to Barnett. George Stroud further testified that he did not learn until December, 1938, when the oil lessee had the abstract examined, that the deed had been recorded. That he was never notified that the bank recorded it; that when he executed the deed in 1923, the bank did not tell him that he had paid the note; that the note was never surrendered to him; that cashier Barnett was succeeded by cashier Pendergast in 1924, and Pendergast remained as cashier until the bank went into voluntary liquidation in the Spring of 1928. There was evidence that when the bank was closed, five years after execution of the deed, which the bank says, together with the picture show, paid off the note, that the note was then in the "charged-off" file in the bank and had not been surrendered to Stroud and there is also evidence that after said time payments were made and received on the note. In 1928, Herstein was appointed trustee and liquidating agent for the bank. Thereafter, in 1939, he transferred said land to appellants, or those under whom they claim.

■ Jim Stroud's testimony as to the agreement between George and the bank that the deed was to be used as a mortgage, or additional security, is substantially the same as that of George. Jim Stroud further testified that after liquidation of the bank in 1928, he had a discussion with Herstein, former president of the bank and then trustee and liquidating agent, about the return of George Stroud's note and deed; that Herstein said he "didn't consider they had anything in the proposition so far as the bank was concerned"; that Herstein said "there was no reason why it shouldn't be turned back to us"; that Herstein said they would return the note and deed to George; that a month or six weeks after the bank closed, he had more than one conversation with Herstein about the return of George Stroud's note and deed; that he promised to return them but did not. There are other circumstances in evidence tending to support the jury finding that it was agreed between George Stroud and the bank that the deed was to be held as securi-

ty for his debt. The testimony was sufficient to make it a question for the jury as to whether or not the deed was intended as a mortgage. Shell Oil Company v. Howth, 138 Tex. 357, 371, 159 S.W.2d 483, 492; 29 Tex.Jur. 803, Sec. 13, p. 810, Sec. 17; McFarlane v. Couger, Tex.Civ.App., 139 S.W. 2d 158 (writ ref.)

■ In addition to appellants' contention that the evidence was not so clear, unequivocal and convincing that the instrument was mutually intended as a mortgage as to authorize the finding that it was a mortgage and not a deed they further insist that the testimony as to the agreement between George Stroud and the bank that the deed was intended as a mortgage cannot be given any effect because it was admitted that such agreement was had before the execution of the deed and, therefore, they say, such testimony is insufficient to sustain a finding that it was mutually intended by the parties to the deed at the very time it was executed and delivered, that it was a mortgage. The testimony of the Strouds as to the conversations between them and the bank's cashier to the effect that the deed was to be taken merely as additional security for the debt shows that such agreement took place prior to the execution and delivery of the deed. George Stroud's testimony is substantially that he relied upon the bank's agreement that the deed would be treated as a mortgage, otherwise, he would not have executed it. Such evidence was sufficient to sustain a finding that at the very instant the deed was executed and delivered, it was mutually intended that the deed should be treated as a mortgage. Grier v. Casares, Tex.Civ.App., 76 S.W. 451, 452. In Knox v. Brown, Tex. Com.App., 16 S.W.2d 262, it was held that the quantum of proof necessary to establish with clearness and certainty that an instrument in a form of an absolute deed was mutually intended by the parties thereto as a mortgage must, under a comparable fact situation, be left to the determination of the jury. The decision in Young v. Blain, Tex.Com.App., 245 S.W. 65, is to the same effect. In Harrison v. Hogue, Tex.Civ.App., 136 S.W. 118 (writ ref.) it was held that where the consideration for a deed is a pre-existing debt, unless it is shown that the debt is extinguished and its evidence surrendered that the instrument will be declared a mortgage. See also Holmes v. Tennant, Tex. Com.App., 231 S.W. 313; Ruffier v. Womack, 30 Tex. 332; Calhoun v. Lumpkin, 60 Tex. 185 and 29 Tex.Jur. 821.

Appellants' second point is that appellee, having alleged that the deed was a mortgage to secure a debt, is not entitled to the judgment rendered because the evidence is insufficient to authorize a finding that the debt had been paid and appellee has not offered to pay the debt.

■ Appellee's suit was one in trespass to try title. He obtained judgment awarding him title and possession of the land by proving, to the satisfaction of the jury, that his deed to the Valliant bank was in fact a mortgage. He thereby avoided the claim of appellants that title passed to the bank under said purported deed. The judgment in effect merely declares that the instrument, which on its face is an absolute conveyance, was merely a mortgage because such was the intent of the parties thereto. There was no attempt by appellants to recover on the note and, therefore, no occasion for appellee to plead the statute of limitation against said note and lien. Appellants did not plead or prove their ownership of the note and lien nor any attempt to transfer them to appellants. Their testimony showed only the deed from Stroud to the bank and deed from the bank to them, or those under whom they claim. See Mann v. Falcon, 25 Tex. 271, 277. When this suit was filed, George Stroud, not appellants, was in lawful possession of the land. We think Stroud may maintain this action without offering to pay the debt, which is clearly barred by limitation. Mann v. Falcon, 25 Tex. 271; McKeen v. James, 87 Tex. 193, 27 S.W. 59; Loving v. Milliken, 59 Tex. 423; Robinson v. Smith, 133 Tex. 378, 128 S.W.2d 27. We think the evidence is sufficient to support the answer to Issue Three to the effect that George Stroud held peaceable and adverse possession of the land, cultivating, using and enjoying it for ten years after April 7, 1928. The evidence shows that after closing of the Valliant bank, about April 7, 1928, nei-

1014

ther appellants nor those under whom they claim paid taxes, collected rent or did any act manifesting a claim of ownership of the land, until the question of an oil lease arose in December, 1938, but that taxes were paid and rent collected by Elliott for the Stroud heirs, including George Stroud. The testimony is also sufficient to support the answer to defendants Issue Number Three.

■ Appellants contend the judgment should be reversed because of letters written by George Stroud to Yawitz and Herstein in February 1939. They say that because appellee introduced said letters in evidence, he is bound thereby and no issue of fact arose for determination by the jury. They contend that the legal effect of the introduction of said letters by appellee is to conclusively show lawful possession of the land by appellants and preclude recovery of the land by appellee without payment of the debt. If said letters constitute positive and definite testimony by appellee to the legal effect that the deed was what it purported to be and not a mortgage or that appellants were in lawful possession of the land, Stroud is precluded from recovering. J. R. Watkins Co. v. King, Tex.Civ. App., 83 S.W.2d 405, 407; Kimmell v. Tipton, Tex.Civ.App., 142 S.W.2d 421. Said letters are as follows:

"Oklahoma City, Okla.
"February 1, 1939.
"Mr. Krank Yawitz,
  "Broken Bow,
  "Oklahoma.
"Dear Frank:

"I have a letter today from the attorney acting for Mr. H. L. Singleton of Graham, Texas, to whom we leased the section of land held by the Stroud heirs and yourself in which he states that there is no deed on record showing your interest in this property.

"If this deed has been executed, will you kindly send it to the county clerk at Breckenridge, Stephens County, Texas, and have same properly recorded.

"I am enclosing a copy of my letter to Mr. Herstein, which I believe is self-explanatory. I would appreciate a letter from you as soon as possible as to what date you will send the deed to be recorded.

"Yours truly,
"George H. Stroud"
"Oklahoma City, Okla.
"February 1, 1939.
"Mr. Bernie Herstein,
  "Idabell National Bank,
  "Idabel, Oklohoma.
"Dear Mr. Herstein:

"You will recall that some years ago I transferred my interest in a tract of land located in Stephens County, Texas, to the Citizens National Bank of Valliant, Oklahoma. The bank later was closed and, as I understand, the assets of the bank were transferred to your present bank, including the title to this property.

"It is my understanding that you later transferred the title of the above land to Frank Yawitz of Broken Bow, Oklahoma.

"Some weeks ago a lease was drawn and given on the entire property owned by the heirs of my father to Mr. H. L. Singleton of Graham, Texas, for the consideration of a well to be drilled on said property. Frank and Bessie Yawitz joined in this lease.

"I have a letter today from Mr. P. V. Hinson, attorney located at Graham, Texas, acting as attorney for Mr. Singleton, in which he states after examining the abstract he would like to have the receivership proceedings on the Citizens National Bank assests transcribed and placed on record in Stephens County, Texas, to determine who has the authority to sign for their interest in this property at the present time. He also states that Frank Yawitz and wife have nothing on record to show any interest in the land. I am writing Frank today (a copy of my letter is enclosed) asking him to record his deed with the county clerk of Breckenridge, Stephens County, Texas.

"No doubt if you have transferred this property to Frank and Bessie Yawitz, it will be unnecessary to have the proceedings of the Citizens National Bank of Valliant recorded, but if you still hold title to the property it will be necessary so that you can join in the lease.

"I would appreciate hearing from you as to just what the status is as far as the interest of the Citizens National Bank now has in this property.

"Yours truly,

"George H. Stroud"

The record, including the letters is susceptible to the interpretation that Stroud had long attempted to obtain an oil and gas lease on the section; that he finally obtained a drilling contract from Singleton; that George Stroud, his mother and all the heirs of his father, joined in the execution of an oil and gas lease; that the contract called for drilling an oil well on said tract within 120 days; that lessee's attorney refused to approve the lease because the abstract showed a deed purporting to convey George Stroud's one-sixth interest in the section to the Valliant bank, and the lease was not signed by the bank or its assigns. George Stroud was clearly claiming an interest in the land when he joined the other Stroud heirs in executing an oil lease on the section to Singleton on December 20, 1938. George Stroud acknowledged the lease on December 20. Singleton must have required that Yawitz also execute the lease. Yawitz acknowledged the lease December 31. All of the Strouds appear to have executed the lease before Yawitz. This was before George Stroud wrote the letters to Yawitz and Herstein. Thereafter, in May, 1939, all the Stroud heirs executed a lease of the section to Singleton, warranting the titles to the entire section. The jury might have concluded from the evidence that appellee did not mean by said letters that the deed was not a mortgage or that appellants were in lawful possession of the land, but that he hoped to get a speedy test for oil and gas; that appellee intended to get all possible claimants to the tract to join in the execution of an oil and gas lease in time that the drilling contract might be carried out and that, thereafter, steps would be taken to have the ownership of the land judicially determined. Farr v. Kirby Lumber Company, Tex.Civ. App., 203 S.W.2d 815, 819. From all the facts and circumstances in evidence we cannot say, as a matter of law, that appellee is in the same position as if he had testified clearly and unequivocally that the deed was not a mortgage, or that the bank or its assignees were in lawful possession of the land.

All of appellants' points have been carefully considered. We believe reversible error is not shown. The judgment is affirmed.