## MACKEY v. MORRISON.
### No. 12325.

Court of Civil Appeals of Texas. Galveston. Jan. 24, 1952.

Rehearing Denied Feb. 14, 1952.

Lawler & Childress, Virgil Childress, Lawrence P. Gwin, of Houston, for appellant.

Fouts, Amerman & Moore, J. W. Moore, of Houston, for appellee; A. E. Amerman, Jr., of Houston, of counsel.

GRAVES, Justice.

This was a trespass to try title suit, filed in the District Court of Harris County by appellant W. S. Mackey against appellee Walter L. Morrison, to recover an undivided one-half interest in certain lands and oil, gas, and mineral interests, leases, royalties, and overriding royalties, in lands, all situated in Brazoria, Colorado, and Lavaca Counties.

The case was tried before the Court without a jury, and resulted in a judgment that appellant take nothing by his suit.

The Court filed findings of fact and conclusions of law, upon which the judgment was based.

No objections to either the findings or conclusions made were presented, nor were there any requests for additional or further findings of either sort.

In protest here against the judgment so adverse to him below, the appellant presents these points of error:

(1) The Court erred in refusing to hold that, under the express and unambiguous terms of the escrow agreement, the escrowed deed from Mackey to Morrison, dated August 30, 1947, conveying the properties sued for herein, was only a mortgage, and not a presently effective conveyance of Mackey's fee-simple title to said properties.

(2) The Court erred in holding that, despite the express and unambiguous terms of the escrow agreement to the contrary, the escrowed deed from Mackey to Morrison, dated August 30, 1947, conveying the properties sued for herein, was a presently effective conveyance of Mackey's fee-simple title to such properties, from the moment it was deposited in escrow, on August 30, 1947.

(3) The Court erred in holding that Mackey's fee-simple title to the properties sued for herein was completely divested from him by the transactions between Mackey and Morrison, commencing on August 30, 1947, and ending on or about September 23, 1947.

Under these presentments, it is evident that the most material of the written documents between the parties were the "Escrow Agreement" and the "Escrowed Deed" from Mackey to Morrison, dated August 30, 1947; accordingly, copies of those two documents are hereto attached as "Exhibits A and B," and made a part hereof.

In other words, it is thus made evident that appellant pitches his whole cause on appeal upon his contention that the relations between himself and the appellee showed that, in legal effect, he had never given the appellee anything beyond a mortgage upon his one-half interest in the properties involved, despite their form, and there still remained in him the equitable right of redemption of his interest, which the trial court wrongfully denied to him. In support of that over-all contention he cites, among others, these authorities: Ullman v. Devereux, 46 Tex.Civ.App. 459, 102 S.W. 1163, writ ref.; Wilcox v. Tennant, 13 Tex.Civ.App. 220, 35 S.W. 865, writ ref.; 10 Tex.Jur. 159, p. 272; 17 Tex.Jur. 390, p. 858; 4 Pomeroy's Equity Jurisprudence (5th ed. 1941) Sec. 1193, pp. 568–570; 59 C.J.S., Mortgages, § 818, pp. 1561–1562; 2 Jones, Mortgages, 8th ed. 1928, Sec. 1326, pp. 788–790; 65 A.L.R. 771; 2 Pomeroy's Equity, Sec. 450, p. 280.

The appellee, in turn, thus in substance, replies to appellant's position: "Rules of law applicable to a simple mortgagor-mortgagee relationship actually have no direct application to this case, which involves the dissolution and settlement of accounts between partners. Actually, where partners are involved, and one has advanced more money for the partnership-business than the other, the debtor-creditor relationship exists—not between the partners themselves —but between the partners and the partnership. But, even under the strict application of the principles of mortgage-law, the agreements here involved are in no way against public policy, or in no way gave rise to a situation, which resulted in Mackey being oppressively, or unfairly, deprived of his interest in these properties.

\* \* \* Mackey was given every fair opportunity to pay his way; but, having breached his original agreement \* \* \*" he "has no moral right, or claim, to the properties here involved. Certainly nothing that Morrison, or his attorneys, did imposed upon Mackey, or unfairly deprived him of his properties, \* \* \*. The trial court, after hearing all the evidence, fairly arrived at his Findings-of-Fact and Conclusions-of-Law, and \* \* \* Morrison was justly, \* \* \* legally, and morally entitled to the judgment, which was entered by the court."

The field of jurisprudence, to which appellant thus contends his cause is referable, is a vast one—so vast that this Court would hesitate to enter it with any expectation of adding anything to the rules and principles therein, which appear to have been fairly well settled in the general law; he, however, cites as one among the leading cases, upon which he depends in that connection, the decision of this Court in Wilcox v. Tennant, 13 Tex.Civ.App. 220, 35 S.W. 865 (writ ref.).

To the contrary of appellant's contention, the trial court found and held that no mortgage relationship had ever been intended, or in fact entered into, between the parties here; but that they had simply and plainly agreed upon in the documents so depended upon by the appellant, a dissolution and settlement of the accounts between them, without the intent or objective of leaving any right of redemption of the one-half interest in the properties so affirmatively conveyed from Mackey to Morrison, provided he did not pay his debt to the latter within the time agreed upon.

This Court is in agreement with appellant that perhaps no extant decision in Texas, or out of it, has more convincingly, or more clearly, stated the "once a mortgage, always a mortgage" law than has Judge Williams in the Wilcox v. Tennant, 13 Tex.Civ.App. 220, 35 S.W. 865 (writ ref.), case; but, under the two quoted documents in this cause, and the uncontroverted findings of the trial court on the facts, as to how they fitted into the extended negotiations between these two parties seeking to reach an agreed settlement of their partnership affairs can be brought within that rule, it is unable to perceive.

The documents themselves contain no language from which it would be permissible to conclude that the parties were expecting to do something else than the terms thereof plainly expressed; in other words, in its essential nature and operation, these two, and all the other documents and writings, as found by the trial court, did not create anything which, in its essential nature and operation was a mortgage, but just the direct contrary; nor was there present on the face of them anything, except the passing of the absolute title to Morrison if Mackey's debts to him were not paid, as agreed upon, involved; it is, therefore, an inaccuracy to say, as appellant argues in his brief, that the debts owing by him to Morrison were expressly recognized as continuing and not to be released, etc.; but the appellant is bound by the court's contrary finding on the facts that the deed was not intended to be a mortgage, but was given only in final cancellation of his pre-existing debts.

The appellee, likewise, cites and relies upon the case of Wilcox v. Tennant, 13 Tex.Civ.App. 220, 35 S.W. 865 (writ ref.), urging that a reading of the opinion therein will readily show that "Wilcox was never released from any obligation resting upon him, but continued bound for all of his indebtedness." His brief goes further with this added interpretation of the meaning of that holding: "The court simply applied the rule that a mortgagor cannot, at the outset, deposit his warranty deed with a mortgagee, and contemporaneously agree that, if he does not pay his debt, the deed shall be delivered and become absolute, and that the parties, by merely stating that the transaction is a conditional sale, cannot alter the true character of the transaction." This Court approves such interpretation of the meaning of the Wilcox v. Tennant holding.

Appellee cites and relies upon a great number of other authorities, among which are these: Moore v. Beverlin, 186 Okl. 620, 99 P.2d 886, 887; Burnett v. Continental, etc., Tex.Civ.App., 191 S.W. 172 (no writ) cited by Com.App. in Neal v. Pickett, 280

S.W. 748; Baldwin v. American, etc., 76 Cal.App. 80, 243 P. 710; Ruden v. Kirby, 59 S.D. 631, 241 N.W. 791; Ravnaas v. Andrich, 60 S.D. 281, 244 N.W. 361; In re Jones, D.C., 1938, 23 F.Supp. 10; 35 Am. Bankr.Rep., N.S., 490; Hutchings v. Terrace, etc., Mo., 175 S.W. 905; In re Eisele, 7 Cir., 1936, 82 F.2d 309; 31 Am.Bankr.Rep., N.S., 153; Alexander v. Phillips, etc., 10 Cir., 130 F.2d 593; Hawkins v. Everts, Tex. Civ.App., 91 S.W.2d 1086, (writ ref.); 13 Corpus Juris. Sec. 783, p. 686, 17 C.J.S., Contracts, § 504, p. 1069; 10 Tex. Jur., Sec. 239, p. 418; Edwards v. Atkinson, 14 Tex. 373; Garrison v. Cooke, 96 Tex. 228, 72 S.W. 54; Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S.W. 860; Killough v. Lee, 2 Tex.Civ.App. 260, 21 S.W. 970 (no writ); Note 11 A.L.R. 432, citing McKenzie v. Coslett, 28 Nev. 65, 78 P. 976; Miller v. Butterfield, 79 Cal. 62, 21 P. 543.

■ Upon the cause as a whole, this Court concludes that the findings by the trial court, based upon the quoted instruments, themselves, along with the conduct of the parties thereunder,—to the effect that neither appellant nor appellee intended these instruments to constitute a mortgage; but, on the other hand, intended them to effect a conditional sale of appellant's interest in these properties, in cancellation of his indebtedness and obligations to the appellee, arising out of the joint venture,—are binding and conclusive upon the appellant; further, that the court's conclusions of law, based upon such fact findings, are clearly supported by the decisions of this State. (Cited supra.)

Further discussion is deemed unnecessary, since these conclusions require an affirmance of the appealed-from judgment. It will be so ordered.

Affirmed.

Exhibit A

Houston, Texas,
August 30, 1947.

Mr. Walter L. Morrison,
Esperson Building,
Houston, Texas.

Dear Mr. Morrison:

I have this day executed a deed transferring and assigning to you all of my interest in the lands, mineral leases, royalties and mineral interests which were acquired pursuant to our joint venture with respect to these interests which are particularly described in said deed, a copy of which is attached hereto.

The books with regard to this joint account have been audited down to the 25th day of August, 1945, and as of that date the books reflect that I was indebted to you in the amount of $7,112.55. We have both accepted this audit as correct down to said date. The records of our account since said date reflect that I owe you an additional sum of $1,285.44. I have not had an opportunity to have the books pertaining to this account audited subsequent to said date but will do so on or before the 8th day of September, 1947.

This letter is written to evidence our agreement with regard to the settlement and termination of this account. If an audit of said account subsequent to the 25th day of August, 1945, checks with the balance which the books of our account reflect to be due and owing you by me, or if on or before the 8th day of September 1947, we mutually agree upon a settlement of any difference pertaining to this account, it is understood and agreed that unless on or before the 8th day of September 1947, I pay to you in cash or by cashier's check the sum of $8,397.99, or the amount which we have mutually agreed upon, the original of the deed, a copy of which is attached hereto, which has been duly executed and deposited with A. E. Amerman, Jr., as escrow agent, shall be delivered to you, whereupon you agree to release me of said indebtedness due and owing you by me arising out of said joint venture.

If, however, I do pay said sum owing to you within the time and in the manner herein provided, the deed herewith deposited shall be delivered to you by the escrow agent and you agree to immediately reassign and reconvey to me, without warranty of title except by, through or under you, an equal undivided one-half interest in and to the properties described in said deed, except as to the Baum royalty where your interest shall exceed mine by the amount I sold to Floyd Senter.

But in the event we cannot agree as to the amount due and owing you by me on said joint account subsequent to the 25th day of August, 1945, on or before the 8th day of September 1947, then in that event, unless on or before the 8th day of September, 1947, I pay to you the sum of $7,112.55, on the conditions hereinafter stated, the said original deed deposited herewith shall be delivered to you by the escrow agent, whereupon I shall be released as to said entire indebtedness owing you on said joint account. If I do pay to you the sum of $7,112.55, the said original deed to you, herewith *deposited, shall be delivered to you, whereupon you agree, simultaneously with the payment of said money, to execute and deliver to said escrow agent a·deed transferring, assigning and releasing to me an undivided one-half interest in and to the properties described in the deed attached hereto, except as to the Baum royalty where your interest shall exceed mine of the amount I sold to Floyd Senter, which deed shall be held by the escrow agent until the controversy pertaining to the balance due you on said account is settled or determined.

Unless the said money is paid to you in the office of A. E. Amerman, Jr., at 2010 Gulf Building, Houston, Texas, before 5 P.M. on the 8th day of September, 1947, then my failure to appear and pay said money shall be conclusive of my election not to do so and the escrow agent shall deliver to you the said original deed which has been deposited with him hereunder without further instructions from either party hereto. If the $7,112.55 is paid within the time provided, then the deed from you to me of an undivided one-half interest in said·properties shall be held by the escrow agent until both parties notify said agent in writing that the controversy as to the balance due you on said account is settled, and he is instructed to deliver said deed.

There is deposited herewith a letter agreement between the parties hereto, of even date herewith, which shall be delivered to W. S. Mackey in the event the money above provided for is not paid to Walter L. Morrison and the deed herewith deposited is delivered to the said Morrison.

It is agreed by both parties that A. E. Amerman, Jr., shall act as escrow agent hereunder and that in so doing he is acting only to accommodate the parties hereto. It is agreed that by acting as escrow agent hereunder and accepting the terms hereof he shall in no way be held liable by either party with respect to any matter which may arise out of the performance of his duties hereunder and that in the event of a disagreement between the parties, the instruments deposited with him hereunder may be held by him pending an order of court.

If the foregoing, as well as the letter agreement referred to herein, sets out our agreement pertaining to the settlement of our account, please so signify by affixing your signature hereto at the place indicated.

Yours very truly,
/s/ W. S. Mackey
W. S. Mackey

Accepted:
/s/ Walter L. Morrison
/s/ A. E. Amerman Jr.
Escrow Agent.

Houston, Texas.
August 30, 1947.

Mr. W. S. Mackey,
Esperson Building,
Houston, Texas.
Dear Mr. Mackey:

There has been delivered to me an original deed, copy of which is attached hereto, conveying and assigning to me all of your interest in certain lands, leases, mineral and royalty interests in lands located in Colorado, Lavaca and Brazoria Counties, Texas, which interests were heretofore acquired by us for our joint account. There had been invested in these properties for the joint account the total sum of $16,346.02. Of that sum you were indebted to me in the amount of $8,173.01. In consideration for the assignment of said properties to me I have canceled and released you from said indebtedness.

I intend to manage and dispose of these properties in an effort to realize from the sale or operation thereof the money which

I have invested therein. If within two years from the date hereof I have realized from these properties the sum of $16,346.02, over and above any taxes, delay rentals, operating or other costs or expenses which may be incurred by me subsequent to the date hereof incident to the sale, management, disposition, operation or handling of said properties, I agree upon said sum being so realized by me to transfer and assign to you an undivided one-fourth interest in and to any of said properties remaining vested in me after said sum has been so realized from said properties.

It is definitely understood that nothing herein contained shall obligate me to in any way preserve any lease or royalty interest covered by said deed by the payment of delay rentals, drilling operations or otherwise. It is further understood that the matter of the handling, sale or disposition of said properties shall be left entirely to my judgment and that I shall in no way be obligated to sell, operate or otherwise dispose of said properties unless in my judgment I deem it advisable, nor shall I in any way be liable to you for damages which you might claim incident to the exercise of my judgment in these matters.

Your rights under this letter with respect to these properties shall not be subject to sale, assignment or incumbrance prior to the execution of an assignment to you, if and when said sum above mentioned has been realized by me.

Unless I am able to realize said sum before the expiration of two years from the date hereof, then all rights which you have in said properties under the terms of this letter shall automatically cease and terminate.

Prior to any assignment to you of your contingent one-fourth interest in said properties, it is understood that you own no title or interest or right to possession in or to any of said properties, your interest being contingent upon my realizing said sum from the properties, and that until such assignment to you is executed I shall have the unrestricted right and power to sell, dispose of, operate, pool, unitize and manage said properties, and that it shall in no

way be necessary for you to join in any deed, assignment or other instrument pertaining thereto.

If this letter properly sets out our agreement with respect to said properties, so signify by affixing your signature hereto at the place indicated.

Yours very truly,
/s/ Walter L. Morrison
Walter L. Morrison

Accepted:
/s/ W. S. Mackey
W. S. Mackey

Exhibit B

The State of Texas ⎱
County of Colorado ⎰

Know All Men By These Presents:

That, Whereas, on or about the month of July, 1943, Walter L. Morrison and W. S. Mackey, both of Harris County, Texas, entered into an agreement pertaining to the purchase and acquisition of certain land, mineral, mineral leasehold and royalty interests, which interests are more particularly described hereinafter; and

Whereas, under the terms of said agreement said interests were to be purchased and acquired for the joint account of said parties with each party owning equal rights and titles in such lands, minerals, mineral leasehold and royalty interests so acquired as well as the proceeds or profits derived from the sale, handling or disposition thereof, with the further agreement that all costs and expenses incurred in obtaining, maintaining and handling said interests were to be borne equally; and

Whereas, under the terms of said agreement the following lands, mineral, oil, gas and mineral leases and royalty interests were acquired for said joint account and are now held in the name of Walter L. Morrison, subject, however, to the lien of the said Walter L. Morrison which secures the balance due and owing the said Walter L. Morrison by the said W. S. Mackey for expenditures, payments and advances made for the benefit of said joint account and W. S. Mackey incident to the purchase, acquisition and maintenance of said inter-

ests for the joint account, and which lands, mineral, mineral leases and royalty interests covered and affected by said agreement and now standing in the name of Walter L. Morrison, are particularly described as follows, to-wit:

## Lands

The following lands are located in Colorado County, Texas.

1. Lot No. 10, containing ten acres more or less, in a Subdivision of the North Harvey Morey Survey, Abstract #730, more particularly described in deed from Julia E. Hatheway to Walter L. Morrison, dated June 6, 1947 and recorded in Vol. 134, pages 130 and 131, of the Deed Records of Colorado County, Texas.

2. Lot No. 15, containing 10 acres, more or less, out of the Samuel Fowler Survey, Abstract No. 211, more particularly described in a deed from J. W. Winegar and wife, to Walter L. Morrison, dated May 24, 1947, recorded in Vol. 134, pages 46 and 47, of said deed records.

3. Lots or tracts 19 and 21, in Block lettered "A" containing 10 acres, more or less, out of the South Texas Fruit and Land Company Subdivision of a tract out of the Day Land & Cattle Company Survey, Abstract No. 603, Brazoria County, Texas, more particularly described in a deed from Charlotte Morath and Emma Morath to W. S. Mackey, dated May 17, 1945, recorded in Vol. 397, page 377 of the Deed Records, of Brazoria County, Texas, which tracts were deeded by the said W. S. Mackey or Wm. S. Mackey to Walter L. Morrison by deed dated August 13, 1945 and recorded in Vol. 407, page 185 of said deed records.

4. All town lots in the Subdivision of the Town of Sheridan, Colorado County, Texas, described below.

## Minerals

All oil, gas and other minerals in and under and which may be produced from the following described tracts of land located in Colorado County, Texas, together with the surface estates on all lots hereinafter described in the townsite subdivision of the Town of Sheridan, Texas, to-wit:

1. Lot or Tract 20, containing 10 acres more or less, out of the North Harvey Morey Survey, Abstract #730, said tract being more particularly described in a deed from F. W. Guthrie and wife, to Walter L. Morrison, dated June 5, 1944 and recorded in Vol. 121, pages 254–255 of the Deed Records of Colorado County, Texas.

2. Lot No. 36 of the Central Harvey Morey Survey Abstract #730, containing 10 acres more or less, more particularly described in a deed from Earl Hydorn and wife, to Walter L. Morrison, dated June 7, 1944 and recorded in Vol. 126, pages 383–384 of the Deed Records of said county.

3. Tract No. 20, in the South J. B. Fenn Survey, abstract #216, containing 10 acres, more or less, more particularly described in a deed from Fidelity National Bank & Trust Co., as trustee to Walter L. Morrison, dated the 21, day of August, 1944, and recorded in Vol. 122, pages 235–236 of the Deed Records of said county.

4. Lots or tracts numbered 21 and 22 of a subdivision of the S. Fowler Survey, abstract #211, containing 20 acres, more or less, more particularly described in a deed from L. L. Reber, and wife, and others, to Walter L. Morrison dated Oct. 25, 1944, recorded in Book 125, pages 488–489 of said deed records.

5. Lots or tracts numbered 38 and 46 of the Subdivision of the South J. B. Fenn Survey, abstract #216, containing 20 acres more or less, and being more particularly described in a deed from S. B. Cochran to Walter L. Morrison, dated December 21, 1944 and recorded in Vol. 124, pages 143–144 of said deed records.

6. Lot or Tract No. 14, out of the South Harvey Morey Survey, abstract #730, containing 10 acres, more or less; and Lot 9 in Block 79 in the town of Sheridan, containing 10 acres more or less; said tracts being more particularly described in a deed from Chas. N. Gross, Et Al to Walter L. Morrison, dated February 14, 1945 and recorded in vol. 124, pages 573–574 of said deed records.

7. Lots or tracts 15 and 43 of the Central Harvey Morey Survey, abstract #730, containing 22 acres, more or less, more

particularly described in a deed from Mrs. Bessie M. Bradrick, et vir, to Walter L. Morrison, dated April 30, 1945, and recorded in vol. 125, pages 478–479 of said deed records.

8. Lot or tract No. 47, of a subdivision of the I & G. N. Survey #67, abstract #634, containing 10 acres, more or less; and also Lot No. 8, Block 64, of Sheridan Townsite Subdivision, containing 10 acres more or less; being more particularly described in a deed from Grant Barr, et ux, to Walter L. Morrison dated June 12, 1945, recorded in vol. 125, pages 606–607 of said deed records. The above described mineral interests are subject to valid and existing oil, gas and mineral leases as well as any reservations contained in the above-mentioned deeds.

## Non-Participating Royalties

All lands are in Colorado County, Texas and references are to Colorado County Deed Records, except as hereinafter stated.

1. A non-participating ⅛₂ royalty of the whole of any oil, gas or other minerals, except sulphur, and a royalty of 12½¢ per long ton on sulphur, described in a royalty deed from E. W. Thompson, and Pearl D. Thompson, to Walter L. Morrison, dated September 30, 1943 and recorded in book 118, pages 447–449 of said deed records, said royalty interest covering and affecting tract or lot No. 41, of the S. Fowler Survey, abstract #211, more particularly described in said royalty deed.

2. A non-participating ⅛₆th royalty of the whole of any oil, gas or other minerals, except sulphur and a royalty of 25¢ per long ton on sulphur, described in a royalty deed from Chas. H. Smith, et al, to Walter L. Morrison, dated November 15, 1943 and recorded in book 125, pages 426–428 of said deed records, said royalty interest covering and affecting Lot or Tract #29 of the South Harvey Morey Survey, abstract #730, containing 10 acres, more or less, and being more particularly described in said royalty deed.

3. A non-participating ⅛₆th royalty of the whole of any oil, gas or other minerals, except sulphur and a royalty of 25¢ per long ton on sulphur, covering and affecting Lot 23 of the Central Harvey Morey Survey, abstract #730, containing 10 acres, more or less, said royalty being more particularly described in royalty deed from Anna Gray, et vir to Walter L. Morrison, dated October 30, 1944, recorded in vol. 123, pages 144–145 of said deed records.

4. A non-participating ⅛₆th royalty of the whole of any oil, gas or other minerals, except sulphur, and a royalty of 25¢ per long ton on sulphur, covering and affecting Lots or Tracts Nos. 31 and 32, of a Subdivision of Section 67 of I. & G. N. R. R. Co. Survey, abstract #634, containing 20 acres, more or less, said royalty interest being more particularly described in a royalty deed from Sara E. Chamberlain, et vir, dated Nov. 29, 1944 and recorded in Book 123, pages 439–440 of said deed records.

5. A non-participating ⅛₆th royalty of the whole of any oil, gas or other minerals, except sulphur, and a royalty of 25¢ per long ton on sulphur, covering and affecting Lots or Tracts 7 and 8, out of the J. B. Fenn Survey, abstract #215, more particularly described in a royalty deed from H. G. Nelson, et ux, to Walter L. Morrison dated June 3, 1946 and recorded in Book 130, pages 461–463 of said deed records.

6. An undivided ½ of the ½ non-participating royalty deed by Dora V. Way Nelson, et vir, to Walter L. Morrison by royalty deed dated January 5, 1944, recorded in Book 119, pages 567–569 of said deed records, said royalty deed covering and affecting Lot or Tract No. 18 of a subdivision of I. & G. N. R. R. Co. Survey #67, abstract 634.

7. That certain undivided ½ non-participating royalty interest deeded by Andrew A. Meier to Walter L. Morrison, dated Jan. 2, 1945, covering and affecting Lot or Tract #56 of the J. B. Fenn Survey, Abstract #216, more particularly described in said royalty deed recorded in Book 124, pages 106–107 of said deed records;

8. That certain undivided ½ non-participating royalty interest deeded by Perly R. Balzer, et vir, to Walter L. Morrison, dated January 10, 1945, covering affecting

Lots 16 and 24, of the S. Fowler Survey Abst. #211, containing 20 acres, more or less, more particularly described in said royalty deed recorded in Book 124, pages 95–97 of said deed records;

9. That certain undivided ½ non-participating royalty interest deeded by Alvin E. Falkner, et ux, to Walter L. Morrison, dated June 28, 1945, covering and affecting Tracts or Lots 45 and 53 of the J. B. Fenn Survey, abstract #216, containing 20 acres, more particularly described in said royalty deed recorded in Book 128, pages 34–35 of said deed records;

10. That certain undivided one-half royalty interest deeded by Margaret Bain to Walter L. Morrison dated November 16, 1944, recorded in Book 123, pages 227–228 of said deed records, covering and affecting Lot or Tract #52 of the J. B. Fenn Survey, abstract #215, containing 10 acres, more or less;

11. That certain undivided one-half royalty interest deeded by Pearl Bishop to Walter L. Morrison by royalty deed dated February 27, 1945, recorded in Book 124, page 584–585 of said deed records, covering and affecting Lots or Tracts Nos. 5 and 6 of a subdivision of I. & G. N. R. R. Co. Survey #67, abstract #634, containing 20 acres more or less.

The last two above-mentioned royalty interests become participating mineral interests upon the termination or forfeiture of the lease existing on said lands at the time of the execution of said instruments.

12. An undivided ⅛th nonparticipating royalty of the whole of any oil, gas or other minerals, except sulphur and a royalty of 25¢ per long ton on sulphur, as described in royalty deed from W. S. Mackey to Walter L. Morrison, dated Feb. 11, 1946, recorded in Book 130, pages 624–625 of the deed records of said county, covering and affecting Lot or Tract No. 53 out of the J. B. Fenn Survey, abstract #215, containing 10 acres, more or less;

13. That certain ¼th nonparticipating royalty interest deeded by W. S. Mackey to Walter L. Morrison by deed or assignment dated the 4th day of Feb. 1944 and recorded in Book 140, pages 181–182 of the Deed Records of Lavaca County, Texas, which royalty interest was deeded to the said W. S. Mackey by Geo. K. Baum, Trustee, as will appear from the records of Lavaca County, except that fraction of said royalty heretofore assigned by the said Walter L. Morrison as will appear from said records. Said royalty interest affecting land in Lavaca County, Texas with a portion thereof possibly being in Colorado County, Texas.

### Oil, Gas and Mineral Leases

Oil, gas and mineral leases to Walter L. Morrison, as lessee, from the following named lessors, recorded in the oil and gas lease records of Colorado County, Texas, hereinafter mentioned.

1. C. P. Bradley, lessor, dated Nov. 23, 1944, Book 49, pages 72–76, covering Lot or Tract 28 of Subdivision of I & G N R R Co. Survey, Abst. #634, Section 67, containing 10 acres, more or less;

2. Francis B. Johnson, et al, dated Nov. 24, 1944 Book 49, pages 322–326, covering Lots or Tracts 35 and 44 of said I & G N R R Co. Survey, Abst. #634, Section 67, containing 20 acres; more or less;

3. R. E. Cressey, et ux, Nov. 27, 1944 Book 49, pages 215–219, Lots or Tracts 36 and 45 I & G N R R Co. Survey Abst. #634, Section 67, containing 20 acres; more or less;

4. M. L. Schroeder, et vir, 12/19/1944, Book 50, pages 259–263 covering Lot 9, I & G N R R Co. Survey Abst. #634, Section 67, containing 10 acres; more or less;

5. M. D. Sutherland, 5/18/1945, Book 52, pages 170–174, Lot or Tract No. 8, I & G N R R Co. Survey Abst. #634, Section 67, containing 10 acres; more or less;

6. Alexander J. Giggar, et ux, 5/18/1945, Book 52 pages 7–11, covering Lot 20, I & G N R R Co. Survey, Abst. #634, Section 67, containing 10 acres, more or less;

7. Guy Montgomery, et ux, 5/18/1945; Book 52, pages 11–15, covering Lot or Tract #1, I & G N R R Co. Survey, Abst. #634, Section 67, containing 10 acres, more or less;

8. Mrs. Margaret Atwood, 5/18/1945; Book 52, pages 119–123, covering Lot #25, containing 10 acres; more or less;

9. Howard H. Whittenberg; April 28, 1947, Book 61, pages 104–108, covering Lot No. 24, containing 10 acres; more or less;

10. Mary J. Weston et al; June 2, 1947; Book 61, pages 502–507, covering Lot 4, containing ten acres, more or less;

11. Clifford Veal, et ux, Tract No. 3, recorded in Vol. 50, pages 99–104;

All of the leases above described cover lots or tracts in I & G N R R Co. Survey #67, Abstract #634, Colorado County, Texas.

The following tracts are located in the subdivision of the South Harvey Morey Survey, Abst. #730, each of these lots containing 10 acres, more or less, in Colorado County, Texas.

12. Charles H. Smith, et ux, dated Nov. 15, 1943, recorded in Book 49, pages 173–177, covering Lot or Tract 29;

13. Etta G. Cochrane Wilmeth, et vir, dated Dec. 6, 1944, Lot or Tract #33, recorded in Vol. 49; pages 153–157;

14. Etta G. Wilmeth, et al, dated Dec. 6, 1944, covering Lots or Tracts Nos. 3 and 8, recorded in Vol. 49, pages 330–334;

15. Francis M. Wilson, Jr., et ux, dated September 2, 1946, recorded in Book 59, pages 28–34, covering Lot or Tract #1;

The following tracts are located in a subdivision of the J. B. Fenn Survey, Abstract #216, Colorado County, Texas.

16. Sarah Nelson, et al, dated Dec. 8, 1944, recorded in Book 50, pages 507–512, covering Lot or Tract #10, containing 10 acres, more or less;

17. Bertha Harmon Griffin, dated Jan. 10, 1945, recorded in Vol. 49, pages 313–317, covering Lots or Tracts 33 and 41, containing 20 acres;

18. Frank F. Wynn, et ux, dated Jan. 23, 1946, recorded in Book 55, pages 346–350, covering Lot or Tract No. 18 of a subdivision of the J. B. Fenn Survey, Abstract 215, containing 10 acres, more or less.

19. Amelia Smith, dated Dec. 23, 1944, covering Lot 6 of the Central Harvey Morey Survey, Abst. #730, recorded in Book 49, pgs. 326–330.

The following oil, gas and mineral leases were executed to W. S. Mackey as lessee and were thereafter assigned by the said Mackey to Walter L. Morrison. References to book and page are to the oil and gas lease records of Colorado County, and the lessors in said leases are hereinafter named. Said lands are in Colorado County, Texas;

1. Mrs. Hazel Reeves, et al, Feb. 5, 1945, recorded in Book 50, pages 235–241, corrected by lease of same date from same lessors covering Tract No. 30, Section 67 of I & G N R R Co. Survey, Abst. #634;

2. J. A. Schilhab, et ux, dated Dec. 2, 1943, recorded in Book 42, pages 542–546, covering Lot or Tract No. 4, out of the J. B. Fenn Survey, Abst. #216, containing 10 acres, more or less;

3. M. Theresa Austin, et al, dated February 5, 1945, recorded in Book 50, pages 182–187, covering Lots 1, 2 and 9 of the Subdivision of the J. B. Fenn Survey, Abst. 216;

4. Rosie Simpson, dated Feb. 5, 1945, recorded in Vol. 50, pages 358–362, covering Lot 17 of the Subdivision of the J. B. Fenn Survey, Abst. #216;

5. Henry G. Erickson, dated June 22, 1946, recorded in book 59, pages 23–28, covering Lot 11 of the Wm. Webb Subdivision of Timothy McKean Survey, abstract #416, containing 10 acres, more or less;

6. Ethel Pavel, et al, dated August 31, 1946, recorded in Book 58, pages 343–349, covering the north 48 acres of a certain 96 acre tract out of the Timothy McKean Survey, abstract #416, said tract being more particularly described in said lease;

7. Johnny Willie Starr, et al, dated August 31, 1946 covering South 48 acres of a certain 96 acre tract, out of the Timothy McKean Survey, abstract #416, which 48 acres is the south 48 acres of the 96 acre tract described in lease No. 6 (above);

8. Franz C. Gross, dated September 19, 1946, recorded in Book No. 58, pages 425–430, covering 12 acres more or less, in the T. McKean Survey, abstract #416, said 12

acre tract being more particularly de-scribed in said lease and in a deed record-ed in vol. 78, pages 400–401;

9. Inez Bernhard, dated Oct. 21, 1946, recorded in Book 58, pages 519–524, cover-ing Lots 4 and 9 in the Walker Wilson Survey Abstract #581, containing 20 acres, more or less;

10. Fred Scamell, dated September 26, 1946, recorded in Book 58, pages 333–338, covering Lot No. 19, in the Walker Wilson Survey Abst. #581, containing 10 acres, more or less;

11. Ralph E. Scamell, Sept. 26, 1946, recorded in Book 58, pages 338–343, cov-ering Lot No. 20, in the Walker Wilson Survey, abstract No. 581, containing 10 acres more or less;

All of the following Lots or Tracts are located in the Walker-Wilson Survey Ab-stract #602, Colorado County.

12. Pearl Bruce, et al, dated Jan. 11, 1947, covering NW ¼ of Lot 12, contain-ing 10 acres; more or less;

13. Ralph A. Clark, dated December 30, 1946, covering NE ¼ of Lot 12, con-taining 10 acres, more or less;

14. Louise R. Burr, dated December 30, 1946; covering S ½ of Lot 12, con-taining 20 acres; more or less;

15. Alb. Carten, dated January 13, 1947, covering NW ¼ of Lot 3, containing 10 acres, more or less;

16. Mrs. R. C. Glise, dated December 7, 1946, covering N ½ of Lot 2, containing 20 acres more or less;

17. Barbara Sagel, dated Dec. 30, 1946, covering NE ¼ of Lot 14, containing ten acres more or less;

18. C. C. Schwarz, dated Dec. 30, 1946, covering NE ¼ of Lot 15, containing 10 acres; more or less;

19. Carl Seaberg, dated Dec. 12, 1946, covering NW. ¼ of Lot 15, containing 10 acres; more or less;

20. Peter Regent, dated Jan. 13, 1947, covering W ½ of Lot No. 8, containing 20 acres, more or less;

The following Lots or Tracts are located in the A. R. Alexander Survey, Abst. # 51.

21. John Bruderer, dated Jan. 10, 1947, containing 24 acres by metes and bounds description;

22. Glenn E. Spethman, dated Nov. 19, 1946, covering N ½ of Lot 12, in a sub-division of said Survey, containing 20 acres, more or less;

23. Clem A. Wade, dated Dec. 28, 1946; covering SW ¼ of Lot 13, containing ten acres, more or less;

24. E. A. Wolffing, dated Dec. 28, 1946, covering NE ¼ of Lot 4, containing 10 acres more or less;

25. Nina E. Clausen, dated Dec. 30, 1946, covering SE ¼ of Lot 16, contain-ing 10 acres, more or less;

26. George Herder, Jr., dated Feb. 18, 1947, covering NE ¼ of Lot 17, contain-ing 10 acres, more or less.

The following leases are in the John Mayer Survey, Abstract No. 403, Colo-rado County, Texas.

27. Cath. DeCoilette, dated Jan. 13, 1947, covering Lots 13 and 14, containing 30 acres, more or less;

28. Alice E. Glise, dated Feb. 13, 1947, covering SE ¼ of Lot 6, containing 10 acres, more or less;

29. L. W. Ballard, dated February 13, 1947, covering SW ¼ of Lot No. 2, con-taining 10 acres, more or less;

The following tract in the Thomas Mc-Kean Survey, Abstract No. 416.

30. M. E. and Alma Selph, dated Jan. 11, 1947, covering 55 acres by metes and bounds description, being the M. E. Selph 55 acre tract in said survey.

The following oil, gas and mineral leases are executed by the lessors hereinafter named to W. S. Mackey and cover lands in Brazoria County, Texas, reference to book and page being to the Oil and Gas Records of said County.

The leases next following are in the South Texas Fruit and Land Company's Subdivision of 1181 acres out of the Day Land and Cattle Company's Survey, Ab-stract No. 603, Brazoria County.

31. Phillip A. Bergmann, et al, lease dated May 11, 1945, recorded in vol. 3, page 435, covering Lots Nos. 3 and 5. of

Block "E", containing 20 acres, more or less;

32. Charles A. Mulcahay, et ux, dated May 11, 1945, covering Lots 23, 25 and 27, Block "A", containing 15 acres, more or less, recorded, in Vol. 5, page 233;

33. O. G. Agee, dated May 11, 1945, covering Lot 5, Block "D", containing 10 acres, more or less, recorded in Vol. 5, page 225;

34. Clemens F. Fischer, dated May 11, 1945, covering Lot 12, Block "D", containing 10 acres, more or less, recorded in Vol. 5, page 229;

35. Almira Chapman Frey, et al, dated May 11, 1945, covering Lot 6, Block "E", containing 10 acres, more or less, recorded in Vol. 5, page 188;

36. Lucille Schrankler et al dated May 11, 1945, covering Lot 8, Block "A", containing 5 acres, more or less, recorded in Vol. 5, page 215;

37. Herbert F. Schrankler, dated May 11, 1945, covering Lot No. 7, Block "A", recorded in Vol. 5, page 211, containing 5 acres, more or less;

38. Walter H. Meyer et al dated May 11, 1945, recorded in Vol. 6, page 627, covering Lot 5, Block "A", containing 5 acres, more or less;

39. A. J. Snow, dated May 11, 1945, recorded in vol. 5, page 220, covering Lot 3, Block "A", containing 5 acres, more or less;

40. Emma Buehler et al dated May 11, 1945, recorded in Vol. 5, page 206, covering Lot One, Block "E", containing 10 acres, more or less;

41. Helen F. Scott, dated May 14, 1945, recorded in Vol. 5, page 238, covering Lots 6, 8 and 10, Block "D", containing 30 acres, more or less;

42. Wilbur G. Baumann, dated May 14, 1945, covering Lot 11, Block "A", containing 5 acres, recorded in Vol. 5, page 193;

43. Mollie O. Looney, dated May 15, 1945, covering Lots 1, 3 and 5, Block F. containing 58.35 acres, more or less, recorded in Vol. 5, page 183;

44. John H. Young, dated June 8, 1945, covering Lot 7, Block "E", containing 10 acres, more or less, recorded in Vol. 5, page 247;

45. Alexander Lamont, dated June 14, 1945, covering Lots 11 and 13, Block "E", containing 20 acres, more or less, recorded in Vol. 5, page 242;

46. Wm. H. Carl, dated July 2, 1945, recorded in Vol. 5, page 179, covering Lot No. 9, Block "A", containing 5 acres, more or less;

47. Ralph L. Ruth, et ux, dated August 11, 1945, covering Lots 12 and 14, Block "E", containing 20 acres, more or less, recorded in Vol. 7, page 9;

48. Herbert Mercer Lowmiller, et al, dated Oct. 1, 1945, covering Lot No. 15, Block "D", containing 10 acres, more or less, recorded in Vol. 8, page 362.

All of the foregoing being out of a subdivision of the Day Land and Cattle Company Survey.

Also in Brazoria County, Texas, the following oil, gas and mineral leases.

49. David S. Hostetler, dated June 24, 1945, being Tract or Outlot No. 79, in a subdivision of Tract No. 50, in the Angeir-Hall and Bradley Survey Abstract #6, containing 12½ acres, more or less, recorded in Vol. 5, page 201;

50. Lillie Hostetler, dated August 15, 1945, on Lot 82, or outlot in a subdivision of Tract No. 50, of the Angeir, Hall and Bradley Survey, abstract #6, containing 23.3 acres, more or less, recorded in Vol. 7, page 247;

51. Elizabeth Hostetler, dated Dec. 14, 1945, being Lot or Outlot No. 80, of the Woodruff & Down Subdivision of a tract of 691.85 acres, known as Tract No. 50, surrounding the Town of Liverpool and being a part of the Angeir Hall and Bradley League, Abstract #6, and recorded in Vol. 8, page 625.

And, whereas, the following described mineral and royalty interests were acquired for said joint account and are now owned of record in equal undivided interests, in the name of the said Walter L. Morrison and W. S. or Wm. S. Mackey, said interests all pertaining to and affecting lands in Colorado County, Texas, and references

to book and page are to the Deed Records of said County:

## Minerals

All of the oil, gas and other minerals in, on and under and which may be produced from the following described tracts:

1. Lot or Tract 35, of the Subdivision of the J. B. Fenn Survey, Abstract #215, containing 10 acres, more or less, being more particularly described in a deed from Harriet E. Milton, et al., to W. S. Mackey, dated July 21, 1945, recorded in Vol. 127, pages 421–423 of said records, and a deed from Pansy English to W. S. Mackey, dated Dec. 10, 1945, recorded in Vol. 128, pages 220–221, and further described in a deed from W. S. Mackey to Walter L. Morrison dated Dec. 23, 1945, recorded in Vol. 129, pages 278–279.

2. Lots or Tracts Nos. 55 and 56, of the J. B. Fenn Survey, Abstract #215, containing 20 acres, more or less, described in a deed from Mrs. Mina Price to Wm. S. Mackey, dated November 8, 1944, and recorded in Vol. 123, page 219 of said deed records and further described in a deed from the said Mackey to Walter L. Morrison, dated April 2, 1945, recorded in Vol. 125, pages 261–262 of said Deed Records;

3. Lot or Tract No. 32, out of a subdivision of the J. B. Fenn Survey, known as the South Fenn Survey, Abstract #216, more particularly described in a deed from C. H. Molzahn to W. S. Mackey, dated Jan. 4, 1945, and recorded in Vol. 124, page 136 of said Deed Records.

The minerals in and under the three tracts next above numbered 1, 2 and 3, stand one-half in the name of Walter L. Morrison and one-half in the name of W. S. Mackey.

## Non-Participating Royalties

A non-participating 1/16th royalty of the whole of any oil, gas or other mineral, except sulphur, and a royalty of 25¢ per long ton on sulphur, affecting and payable out of the production from, the following described lots or tracts out of the Samuel Fowler Survey, Abstract #211, each lot or tract containing ten acres, more or less, all in Colorado County, Texas; book and page references are to Colorado County Deed Records.

1. Lot or Tract No. 15, said royalty interest having been granted by royalty deed from J. W. Winegar, and wife, to W. S. Mackey, dated December 24, 1943, recorded in Book 119, pages 203–204 of said deed records.

2. Lot or Tract No. 65, said royalty interest having been deeded by Frank A. Dittman, et ux, to Wm. S. Mackey, by royalty deed dated November 27, 1944 and recorded in Book 123, pages 503–505.

3. Lots 17 and 25, said royalty interest having been originally deeded by Mrs. W. H. Paige, et al., to W. S. Mackey, by royalty deed dated July 11, 1944, recorded in book 123, pages 505–506, and corrected by royalty deed dated April 23, 1945.

## Overriding Royalties

1. A certain 1/16th of 8/8ths overriding royalty on oil and gas, and 1/20th either in cash or value, of other minerals, except sulphur, and 25¢ per long ton on sulphur which overriding royalty was reserved by the said W. S. Mackey and Walter L. Morrison in certain assignments of leases to Tidewater Associated Oil Company, which overriding royalties were thereafter divided equally between the said W. S. Mackey and Walter L. Morrison by instrument dated the 31st day of July, 1945, recorded in Vol. ——, page —— of the ———— Records of Colorado County, Texas, reference to which instrument and the record thereof is here made for a more particular description of the tracts covered and affected by said overriding royalty and of said overriding royalty interest.

2. A similar 1/16th overriding royalty reserved in an assignment of a lease, which lease was dated the 20th day of November, 1944, from Paul Kixmiller, et al, to Walter L. Morrison, recorded in Vol. 49, pages 334–340 of the oil and gas lease records of Colorado County, Texas, covering tract or lot No. 27, of a subdivision known as the Sheridan Land & Investment Company Subdivision of the South J. B. Fenn Survey, appearing of record in Plat Book 1, page 18, of the records of Colorado County, said assignment being from Walter

L. Morrison to Tidewater Associated Oil Company as will appear from the records of Colorado County, Texas.

3. A similar 1/16th overriding royalty reserved in an assignment of a lease, which lease was dated Oct. 27, 1944, from Felix Fehrenkamp, et al, recorded in Vol. 48, pages 599–603 of said Oil and Gas Lease Records, covering Tract 7 and Tract 12, of the Subdivision of the Central Harvey Morey Survey, Abstract #730, as shown by plat of said subdivision filed in Vol. 1, page 18 of the Plat Records of said county, containing 20 acres, which assignment was from Walter L. Morrison to Tidewater Associated Oil Company of record in said county.

And, Whereas, the following described tract of land, and overriding royalty interest, were acquired for said joint account and stand in the name of W. S. Mackey, to-wit:

### Land

Lot 17 of the Walker Wilson Survey, Abstract #581, containing 10 acres, more or less, which tract was deeded by Iva E. Berryman to Wm. S. Mackey, by deed dated December ——, 1946, recorded in Vol. ——, page ——, of the Deed Records of Colorado County, Texas.

### Overriding Royalties

1. A certain 1/24th of 7/8ths overriding royalty on oil and gas, and overriding royalty of .333¢ per long ton on sulphur, reserved by Wm. S. Mackey in an assignment of a lease, which lease was dated November 15, 1946, from Elma Ann McCommas, et vir, to Wm. S. Mackey, covering 105½ acres of land out of the Timothy McKean Survey, Abst. #416, Colorado County, Texas, being the same land described by deed recorded in Vol. N. page 635 of the Deed Records of said County, same being more particularly described in said lease recorded in Book 58, pages 632–638 of the Oil, Gas and Lease Records of said County, which assignment was from W. S. Mackey to British-American Oil Producing Company, dated January 16, 1947, to which assignment reference is made for more particular description of said overriding royalty interest and for all other purposes.

And Whereas, other lands, leases, mineral and royalty interests were also acquired for said joint account but such other interests have either been sold or assigned for the benefit of said joint account or have been terminated, all with the knowledge, consent and satisfaction of both parties hereto, which sales and assignments are hereby ratified and confirmed, save and except that there remains said balance due the said Walter L. Morrison by the said W. S. Mackey, as hereinabove stated;

And Whereas, it is agreed between the parties hereto that said lands, leases, mineral and royalty interests listed above constitute the entire remaining assets of said joint venture and each party hereto hereby agrees, recognizes, and acknowledges, that neither party either owns or claims any right, title or interest in or to any other land, mineral, leasehold, mineral or royalty or other interest in lands or minerals owned or standing in the name of the other party, or to any such interests which may be hereafter acquired by either party, in any of the surveys or counties in which the above described interests are located, or elsewhere, either in or outside of this state, it being the intention and agreement of the parties hereto to wind up, terminate, dissolve and settle said account or joint venture;

And Whereas, there is due and owing by the said W. S. Mackey to the said Walter L. Morrison the sum of $——— by virtue of said agreement and joint venture, which sum represents the sum paid out, advanced or expended by the said Walter L. Morrison for said joint account over and above the amount paid out, advanced or expended by the said W. S. Mackey;

And Whereas, the said parties are desirous of winding up the affairs of said joint venture and to settle and adjust said account;

Now, Therefore, the said Walter L. Morrison and W. S. Mackey hereby dissolve and terminate said joint venture and to the ends above stated, agree as follows:

In consideration of the cancellation and release of the indebtedness of $———, due and owing to the said Walter L. Morrison, I, the said W. S. Mackey do by these

presents, bargain, sell, grant, assign and convey unto the said Walter L. Morrison said above described land, royalty and mineral interests standing in my name, as well as all of my undivided one-half (½) interest in and to said lands, leases, royalty and mineral interests above described, standing in the name of Walter L. Morrison, it being my intention to convey, transfer and assign to the said Walter L. Morrison, his heirs or assigns, and I do so convey, transfer and assign to the said Walter L. Morrison, my entire interest in and to the various tracts of land described in the instruments above mentioned and referred to, whether my interests in said lands and minerals therein are correctly described or not; except that certain 1/16th royalty interest in Lot 38 and Lot 46 of a Subdivision of the J. B. Fenn Survey, Abstract #216, Colorado County, Texas, said royalty interest being described in paragraph "g" of an assignment dated April 13, 1943, and recorded in Book 145, pages 404-407 of the deed records of said County, which 1/16th royalty interest is reserved and excepted to the said W. S. Mackey.

To Have And To Hold said lands, leases, minerals and royalty interests unto the said Walter L. Morrison, his heirs or assigns.

It is further understood and agreed between the parties hereto that from and after the date of this deed, neither party shall by virtue of said joint venture or other agreement which is hereby terminated, have any right, title, interest or claim in or to any lands, leases, royalties or mineral interests hereafter acquired by the other party in any of the surveys or counties where the properties above described are located, or elsewhere in or outside of the State of Texas.

I, the said W. S. Mackey, in consideration of the release of said indebtedness, do hereby warrant that I have in no way sold or otherwise disposed of or incumbered said properties or my interest therein and agree to warrant and defend the title to said properties against the claims of any persons by, through or under me but not otherwise.

In addition to transferring and assigning all of my titles and interest in the above described properties to Walter L. Morrison, I, the said W. S. Mackey, in consideration of the foregoing, do hereby release the said Walter L. Morrison from any and all claims of every character whatsoever which I may have had or claimed to have had, under or by virtue of said joint venture or agreement and the handling of said properties and the proceeds therefrom, it being understood that this is a complete and final settlement of said joint account.

Executed this 30th day of August, A. D., 1947.

/s/ W. S. Mackey
W. S. Mackey
/s/ Walter L. Morrison
Walter L. Morrison.

The State of Texas }
County of Harris }

Before Me, the undersigned authority, on this day personally appeared W. S. Mackey, sometimes known as Wm. S. Mackey, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 30th day of August, A. D. 1947.

/s/ Jane C. Rollins
Notary Public in and for Harris County, Texas.

(Seal)

The State of Texas }
County of Harris }

Before Me, the undersigned authority, on this day personally appeared Walter L. Morrison, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 30th day of August, A. D. 1947.

/s/ Jane C. Rollins
Notary Public in and for Harris County, TExas.

(Seal)